**STATE of Missouri, Respondent,**

v.

**Richard Lee BARRY, Appellant.**

**No. KCD 26509.**

Missouri Court of Appeals,
Kansas City District.

Nov. 5, 1973.

Hill, McMullin & Wilson, Kansas City (John J. Cosgrove, Kansas City, of counsel), for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and PRITCHARD and SOMERVILLE, JJ.

PRITCHARD, Judge.

By the verdict of a jury appellant was convicted of the commission of the crime of manslaughter. The jury assessed his punishment at ten years imprisonment, and the court entered judgment for that term in the Department of Corrections.

Appellant makes three points: (1) That the state's evidence, entirely circumstantial, failed to prove his guilt beyond a reasonable doubt and that the court erred in denying his motion for judgment of acquittal made at the close of the evidence; (2) That the court erred in giving Instruction No. 11, on the subject of appellant's flight because "the instruction assumes that appellant avoided arrest by fleeing from police officers"; and (3) "The court erred in failing to instruct the jury on the lack of motive of appellant."

Lily Winchester, a cousin of appellant, lived in an apartment at 1117 East 28th Street in Kansas City, Missouri. There was a porch which overlooked the entranceway to the apartment. On June 14, 1971, when she came home from school, Lily saw appellant and Henry Wesley sit-

ting outside. Wesley lived in the basement apartment and appellant lived in another apartment in the building. Lily greeted the two as she came in the house. Appellant had a beer in his hand, but Lily did not know whether he had drunk it. When Lily got into her apartment she changed her clothes and then lay down next to the porch door, where she was able to hear the conversation of appellant and Wesley. She heard glass breaking, and Wesley said, " 'Don't be throwing bottles at kids' " to appellant. Appellant told Wesley to mind his own business or he would do him the same way. Lily then heard a shot and she came back on the porch, and saw Wesley lying on the ground and appellant standing across from him. After Lily told her mother that appellant had shot Wesley, she heard appellant say, " 'I don't care if I killed him', and then he ran." She did not actually see appellant shoot Wesley and did not see any scuffle or fight.

Officer Willie Pinkston investigated the incident, arriving about two minutes after he was called which was 4:20 p. m. He observed the body of a Negro male lying in front of the apartment building. He saw puncture wounds on both the left and right sides of the chest of the man, and saw some bleeding from lacerations on the top of his head. He searched the area but did not find a knife or gun, and he found no weapon on the body of the man. Pinkston estimated the height of the man to be 5 feet, 10 inches to 6 feet tall, and his weight to be 150 to 160 pounds.

Officer Les Lewis and Detective Theisen processed the body after it was taken to General Hospital and was pronounced dead. The indication was that he had been shot one time, there being an entrance wound and an exit wound. The autopsy performed by Dr. Thomas Fritzlen showed a gunshot wound which entered the left chest and directly through the heart so as to disrupt the heart function very promptly. No bullet was recovered because it went through the body. Death was due to the gunshot wound and not the head lacerations. A blood alcohol test revealed .27 of one per cent by weight of the blood was alcohol, indicating deceased had consumed a substantial amount of alcohol, although still being able to function in walking and talking.

Appellant testified that after going to the Employment Office he got back home at twenty minutes to 4:00. He changed his clothes and put his gun in his pocket. He had gotten the gun two days earlier from his aunt's husband because "Well, actually, well, it is a violent neighborhood and I needed protection." Appellant then went out on the porch and sat down and was reading the paper. Deceased, Henry Wesley, was there and was intoxicated, violent and cursing. He was staggering and using profane language. According to appellant, deceased had a general reputation for violence, he drank a lot of alcohol and sometimes carried a knife or a gun. Appellant, at deceased's request, went and purchased a six pack of beer, and on return deceased gave him one can and kept the other five. Appellant drank his beer and then threw the can into the yard, but denied (later tacitly admitting) that he threw it at any children. Deceased, appearing angry and cursing, said " 'We don't do things like that in this neighborhood.' ". Appellant told him to sit down and mind his business, and deceased jumped up and charged after appellant, as if he were "coming out with a gun or knife. I didn't know for sure. * * * As a matter of fact, he was using his hand as if he had a weapon", and deceased was bending over. Appellant pulled his gun and fired once. Deceased took several more steps, and appellant "took the gun and banged him over the head", and deceased fell. When the bullet was fired, deceased was approximately a foot and a half away from appellant. Thereafter, appellant threw the gun across the street. Appellant then left because he was scared. He went to his cousin's house and stayed there a week, then left Jackson County and went to New York to assist his elderly aunt. He was arrested in New York,

which shocked and surprised him, because he had no reason to believe that a warrant would be out for him.

§ 559.070, RSMo 1969, V.A.M.S., provides: "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." It is not necessary to rule whether at the close of the state's evidence there was sufficient evidence to prove circumstantially that appellant actually fired the shot which resulted in Wesley's death. But see State v. Johnson, Mo., 475 S.W.2d 95, 97 [3], where prior to defendant's admission of slapping deceased, there was evidence of their arguing, what sounded like a slap, a lump was on deceased's head, and there was a statement by defendant to one Bill, " 'Don't panic. When the police get here, tell them she fell out of the car.' " Lily Winchester's testimony did not establish that fact, but only that she saw the two men together when she entered the building. That thereafter, when she was lying down, Lily heard glass breaking and Wesley's remonstrance against appellant throwing beer bottles at the children, and that appellant told him to mind his own business or he would do him the same way. Then Lily heard a shot and saw Wesley lying on the ground and appellant standing across from him. She heard appellant say "I don't care if I killed him." Then appellant ran from the scene. But what is *direct* evidence of the shooting is developed by appellant's own testimony, corroborating the fact of the altercation as shown by other testimony, and the fact that he fled the scene. [It is settled that the act of flight is a circumstance to be considered in connection with other evidence of the commission of a crime. State v. Castaldi, 386 S.W.2d 392 (Mo.1965).] The sufficiency of the evidence, where a defendant adduces evidence in his own behalf, after the overruling of his motion for judgment of acquittal at the close of the state's case, must be determined upon the entire evidence.

State v. Turnbough, 388 S.W.2d 781, 783 (Mo.1965). As is apparent from all the foregoing evidence, the jury was justified in finding appellant guilty of manslaughter, where there was a death resulting from an unlawful assault and battery without malice, even though death was not intended (as appellant testified). State v. Kinard, 245 S.W.2d 890, 891 [2, 3] (Mo. 1952). For the reasons stated, the trial court did not err in denying appellant's motion for judgment of acquittal made at the close of all the evidence.

Instruction No. 11 told the jury that *if* it found that appellant avoided arrest, it might take that fact into consideration in determining his guilt or innocence, that the fact of flight to avoid arrest did not establish the question of guilt or innocence, but could be taken into consideration with all other facts and circumstances to determine the question. Appellant contends that the instruction assumed that he avoided arrest by fleeing from police officers, and was therefore erroneous. He cites State v. Duncan, 336 Mo. 600, 80 S. W.2d 147, 153 [14] (1935). There, an instruction on flight was held bad because it assumed a *disputed* fact of flight, and there was no evidence that appellant fled immediately after the commission of the burglary, or that he fled to avoid arrest. Here, there is no dispute that appellant fled immediately—his testimony is that he did so because he was scared. The legitimate inference is that he fled, concealed himself and left the state to avoid arrest. The jury was required to find that appellant fled, and did so to avoid arrest. The giving of Instruction No. 11, in the circumstances presented assumed no disputed fact, and was not error.

Absent a request, as is the case here, the trial court is not required to give an instruction on motive. State v. Henderson, 301 S.W.2d 813, 816 (Mo.1957). In State v. King, 433 S.W.2d 825, 827 (Mo. 1968), the jury was instructed as to the presence or absence of motive, which was

there said not to be an essential element of murder, and it was further noted that motive has been frequently cited as an important evidentiary fact in homicide cases based upon *circumstantial* evidence. (Emphasis added.) Here, the evidence is direct and undisputed that appellant fired the fatal shot "even absent proof of motive", and there is evidence (the prior altercation) from which motive might have been found by the jury. Appellant's third contention is overruled.

The judgment is affirmed.

All concur.