STATE of Missouri, Plaintiff-Respondent,

v.

Louis RILEY, Defendant-Appellant.

No. 36716.

Missouri Court of Appeals, St. Louis District, Division Three.

April 20, 1976.

James C. Jones, St. Louis, for defendant-appellant.

Preston Dean, Asst. Atty. Gen., Robert H. House, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

Defendant-appellant was convicted of second degree burglary and sentenced under the Second Offender Act to six years imprisonment. On appeal defendant attacks: 1) the sufficiency of the evidence to support the guilty verdict, and 2) the trial court's refusal to grant a new trial on the basis of newly discovered evidence. We find that there was sufficient evidence of defendant's guilt and no error in refusing to grant the defendant a new trial.

■ Inasmuch as defendant challenges the sufficiency of the evidence, in reaching our decision on review we consider the facts in evidence and inferences reasonably to be drawn therefrom in the light most favorable to the State. *State v. Thomas*, 529 S.W.2d 379 (Mo.1975); *State v. Colton*, 529 S.W.2d 919 (Mo.App.1975).

> "[T]he scope of our review extends only to a determination of whether there is sufficient substantial evidence to support the verdict. It is not our function or prerogative to weigh the evidence to determine whether the charge has been proven beyond a reasonable doubt; that is a function of the jury." *State v. Achter*, 514 S.W.2d 825, 826 (Mo.App.1974).

The charge against defendant was for the second degree burglary of Frager Brothers Manufacturing Company, whose place of business was the fourth floor of a building at 1635 Washington Avenue, St. Louis. An officer of Frager Brothers testified that at approximately 5 p. m. on the evening of the

burglary he had secured his company's place of business by locking the elevators and doors leading to the fourth floor and by setting the burglary alarm system. At approximately 7:20 p. m. the burglary alarm system was activated, and two St. Louis police officers immediately responded, arriving at the Frager Brothers building within an estimated two or three minutes from the time of the call. Both officers testified that when they arrived they found the front door locked and that they went to the rear of the building. The rear door of the building opened, and defendant debouched. As soon as the defendant noticed the police, he slammed the door shut and fled inside the building toward the front door. The rear door was locked preventing the police from gaining entrance to the building by means of that door. One of the officers stayed at the rear door and the other raced to the front where he observed the defendant standing inside the building by the locked, front double glass doors. The defendant was bleeding profusely from a cut on his head, a substantial quantity of blood (described as a pool of blood) was on the floor, and the doors were smeared with blood. A desk calculator with plug-in adapters was at the defendant's feet. Since the doors to the building were locked, an employee from the burglar alarm company was called to let the police in the locked building. The defendant was arrested inside the building by the front doors. The desk calculator, which was at the defendant's feet, and a pocket calculator found near the rear door inside the building were determined to have been taken from the Frager Brothers' fourth floor office. The locks to the freight elevator, allowing access to the fourth floor, were also broken.

One of the arresting officers testified that defendant, upon his arrest, had stated that he had been locked in the building and had hit his head trying to get out but that he had stolen nothing. Another police officer heard the defendant state that he had gone into the building to look for work, had become lost, laid down and fallen asleep, and when he awakened, the building was locked. A trail of blood led from the rear doors to the front doors where the defendant was arrested. There were only a few drops of blood on the floor by the rear door, and the amount of blood on the floor increased substantially in a trail toward the front of the building. When defendant was arrested by the front doors he was standing "in a pool of blood." No blood was observed outside the building, and the police responding to the call had a full view of defendant's face when he first emerged from inside the building at the rear door. At that time, defendant had no cuts or blood on his face.

Defendant chose to take the stand, and his testimony differed mightily from the testimony of the police. He testified that he had been in a knife fight earlier in the evening and that his face had been carved upon; that to escape his assailant, he had run through an open door in the Frager Brothers' building and had hidden inside for several minutes; that he subsequently had been locked in the building and was there when the police arrived. Defendant denied having opened the rear door to the building or fleeing toward the front when the police saw him. He denied having fallen asleep in the building, denied having taken the calculators and could not recall making a statement to the police.

■ Defendant's principal allegation of error is that the trial court erroneously overruled defendant's motion for acquittal at the close of the case, arguing that the evidence was insufficient for a guilty verdict. Defendant particularly points to the fact that it would appear to be impossible for him to have broken the fourth floor elevator locks activating the burglary alarm, stolen the calculators and have gone to the first floor within a space of approximately two minutes—the time when the alarm was sounded until the time the police stated they responded to the alarm. But observing the previous admonition that we view the case in the light most favorable to the State, we find the evidence as set forth was sufficient to support the conviction.

■ Basically, the defendant relies on one of the general rules concerning circum-

stantial evidence cases: the facts and circumstances relied on by the State must not only be consistent with each other and with a hypothesis of guilt, but must also be inconsistent and irreconcilable with his innocence and must point so clearly and satisfactorily to his guilt so as to exclude every reasonable hypothesis of innocence. *State v. Burks*, 521 S.W.2d 11 (Mo.App.1975); *State v. Cox*, 508 S.W.2d 716 (Mo.App.1974). But it is also true that the circumstances need not demonstrate an absolute impossibility of innocence. *State v. Maxie*, 513 S.W.2d 338 (Mo.1974) cert. den. 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402; *State v. Phillips*, 452 S.W.2d 187 (Mo.1970). The main thrust of defendant's defensive foil is that the State has proven nothing more than defendant's presence in the building, and, without more, such evidence will not justify his conviction. But there is here an accumulation of incriminating facts which creates more than a suspicion of guilt and which amply supports defendant's conviction. See *State v. Jackson*, 519 S.W.2d 551 (Mo.App.1975).

Looking at the facts most favorable to the verdict, we find that the defendant was present at the scene within an extremely short time after the burglary alarm system was triggered. While mere presence alone, as defendant suggests, may be insufficient to establish guilt, it is a factor to be considered in determining guilt. *State v. Burks*, supra; *State v. Burnley*, 480 S.W.2d 881 (Mo.1972). Also, we have evidence of flight by the defendant when he emerged from the rear door of the building, saw the police and retreated. The reasonable inference is that the defendant attempted to flee, and we must disregard defendant's testimony to the contrary. Flight is another factor to be considered in determining guilt. *State v. Burnley*, supra; *State v. Barry*, 501 S.W.2d 515 (Mo.App.1973). Added to the foregoing circumstances is defendant's apparent possession of the desk calculator at the time of his arrest—it "was at his feet" when the police arrested him in-

side the building. We believe it is reasonable to infer that defendant was in possession of the calculator which had been taken from its proper place on the fourth floor of the building and found beside the defendant on the first floor. See *State v. Bowman*, 472 S.W.2d 355 (Mo.1971).[1] The possession of stolen property is still another circumstance leading to an inference of guilt when considered with other circumstances. *State v. Williams*, 521 S.W.2d 29 (Mo.App.1975). A further circumstance which incriminates the defendant is the entire series of inconsistent statements emanating from him in explanation of his presence within a locked building. Defendant told the police that he had become locked in the building after he had walked in looking for a job, had fallen asleep and hit his head in his wanderings within the building, all of which he denied on the stand. He also denied having opened the rear door and appearing before the police. Truth of the knife fight episode is belied by the fact that when the police first saw the defendant he had no facial cuts, there was no blood outside the building, very little blood near the rear door inside the building but a substantial quantity of blood by the defendant near the front of the building when he was arrested. Thus, there was ample evidence whereby the jury could disbelieve that the defendant had cut his face prior to entering the building and that his running wound was incurred after he had entered the building. But even if the defendant's statement to the police was apocryphal, his attempt to deceive the police is a further circumstance of guilt which the jury could consider. See *State v. Smith*, 521 S.W.2d 38 (Mo.App.1975). In any event, the jury was not bound by the defendant's explanation of the circumstances which he made at trial and could disbelieve his testimony. *State v. Benfield*, 522 S.W.2d 830 (Mo.App.1975).

Defendant relies on cases where only one or two of the above circumstances existed and were found to be insufficient evidence of guilt. The cases upon which defendant

---

1. In *State v. Bowman*, supra, the possession of fruits and tools of a crime was inferred when

items were found less than two feet from where the defendant was hiding.

places reliance are palpably distinguishable from this case where there was evidence or reasonable inference of presence at the scene at the time of the crime, flight, possession of recently stolen goods and a fulsome series of inconsistent statements by the defendant. Clearly, the evidence presented was sufficient to support the guilty verdict. See *State v. Burnley*, supra.

Although the defendant acknowledges that we must regard the evidence in the light most favorable to the State, he would have us examine each element separately and test it for credibility. We will not do this. The following language of *State v. Mick*, 506 S.W.2d 35, 40 (Mo.App. 1974) supplies appropriate answer for defendant's contention:

"In reality, defendant claims that he is entitled to test singly and standing alone each of the facts adduced by the classic test of consistency only with guilt. Such a procedure would destroy all but the most conclusive of the circumstantial cases. Any one of the facts viewed in the abstract might lend itself to innocent explanation. What is required, however, is for all of the facts viewed in their context being satisfactory to establish the guilt of the defendant and exclude all but a remote possibility of his innocence. These facts satisfy that test."

We thus find that the trial court did not err in overruling defendant's motion for acquittal.

We next consider defendant's argument that the trial court should have sustained his motion for new trial on the basis of newly discovered evidence. The alleged "newly discovered evidence" which the defense cites on appeal is the testimony of two men: the janitor at the Frager Brothers building and the employee from the alarm system company who unlocked the door to permit entry for the arresting officer. The motion for new trial and defense brief make the unsupported assertion that the janitor would testify that there was access to the first floor of the building after normal closing hours the night of the burglary, since a truck was being loaded at the

dock. Secondly, the defense asserts that the alarm system employee would testify that he had tried to gain access to the fourth floor shortly after unlocking the building and had found the door apparently locked from the inside.

The trial court has a large measure of discretion in deciding whether a new trial should be granted for newly discovered evidence, as it is not a particularly favored remedy. *State v. Harper*, 473 S.W.2d 419 (Mo. banc 1971); *State v. Lee*, 492 S.W.2d 28 (Mo.App.1973). The requirements for securing a new trial on the basis submitted are: 1) that the evidence has come to the knowledge of defendant since the trial; 2) that it was not owing to his want of due diligence that he did not discover it sooner; 3) that the evidence is so material that it would probably produce a different result on a new trial; and 4) that it is not cumulative only or merely for impeaching the credibility of the witness. *State v. Harper*, supra; *Duncan v. State*, 520 S.W.2d 123 (Mo.App.1975); *State v. Lee*, supra. And the burden is on the defense to show compliance with the above requirements. *State v. Lee*, supra. The unverified allegations by the defense "do not prove themselves, and they are not substantiated by the record." *State v. Stapleton*, 368 S.W.2d 395, 398 (Mo.1963).

We find no abuse of the trial court's discretion in failing to permit a new trial on the basis of newly discovered evidence as urged by the defendant. There is no substantiation that the evidence was not known or readily available to the defendant at the time of trial. Nor would such evidence have material effect upon the outcome of the trial, as, at most, it would merely be cumulative testimony or for impeachment purposes. The evidence of defendant's active participation in the burglary of Frager Brothers was highly incriminating and presented a chasm of guilt too broad and deep to leap. The newly discovered evidence sought to be presented by the defendant would scarcely serve as an ame-

**506**

liorant in opposition to the evidence of guilt.

The judgment is affirmed.

SIMEONE, P. J., and KELLY, J., concur.