**STATE of Missouri, Respondent,**

v.

**Ralph Edward WARD, Appellant.**

No. 38594.

Missouri Court of Appeals, St. Louis District, Division Two.

July 11, 1978.

David J. Kueter, St. Charles, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Robert Presson, Asst. Attys. Gen., Jefferson City, George F. Meyer, Jr., Courtney Goodman, Jr., Pros. Atty., Clayton, for respondent.

STEWART, Presiding Judge.

Defendant was convicted of murder second degree and sentenced to a term of ten years in the custody of Missouri Department of Corrections. For reversal on appeal defendant contends that the court erred in: (1) giving instructions on first and second degree murder because there was insufficient evidence to warrant the submissions; (2) in permitting the State, on voir dire, to seek a commitment from the jurors to assess penitentiary time if defendant was found guilty; (3) permitting the State to introduce a photograph of deceased after the autopsy and introducing the shirt he was wearing when shot; and (4) in failing to grant a new trial on the basis of newly discovered evidence. We affirm.

Ralph Ward, the defendant, was separated from his wife and lived with his father, Seth Ward (Seth). Defendant and Paul Hampton (Paul), the victim, cultivated a community garden. On August 11, 1975 defendant and Paul had a dispute over the garden and Paul destroyed the garden. Defendant called Paul by telephone and heated words were exchanged. Shortly after the telephone conversation defendant and Seth went to Lord Byron's Tavern. Before leaving the house defendant got a shot gun and placed it on the floor of the rear part of his car.

Lord Byron's Tavern is a neighborhood tavern on St. Francois Street in Florissant, Mo., which was frequented by Paul Hampton and the Wards. It is located on a shopping area which, among other businesses has the tavern, a carpet shop, a drapery shop and a resell it store.[1] There is a parking lot in front of the tavern. The tavern has two front doors. Facing the tavern the door on the left is the only door in use. Defendant parked his car slightly to the left of the entrance facing the building. A Plymouth automobile was parked to the right of defendant and to the right of the Plymouth there was a truck belonging to Harold Jackson. All of the vehicles faced the tavern.

Defendant and Seth had a drink in the tavern. Defendant purchased a six pack of beer and he and Seth left the tavern. As they got outside defendant saw Paul on the parking lot approaching the tavern. Defendant put the six pack on the hood of his

---

1. The terrestrial directions of objects necessary to the statement of fact do not appear in the transcript. It will be necessary to make reference to right or left of the tavern as one faces the tavern toward the tavern and away from the tavern.

car and advanced toward Paul. A fight ensued between defendant and Paul, Seth joined the fight to help his son. The combatants ended up on the ground near the left rear of defendant's car, with the Wards on top of Paul. Harold Jackson and Dewey White stopped the fight and lifted defendant off of Paul and walked Paul to the rear of the Plymouth. A third man took Seth to the passenger side of the Ward car. Defendant went toward the front of his car and was heard to say, "I'll straighten this out now." He got the six pack from the hood of his car, went to the left door of the car, unlocked it, placed the six pack upon the seat, unlocked the passenger door, got the gun from the floor of the car and put shells in it. He then walked toward the rear of his car and cocked the gun. Harold Jackson called out, "He's got a gun." Paul Hampton was about fifteen feet to the rear of the Plymouth with his back to defendant, facing Dewey White. As Harold called out Paul turned toward defendant, threw his hands in the air and said, "Oh no" as defendant fired the gun. At the time defendant fired he was at the left side of his two door car at the rear of the door. The gun was fired over the trunk of the car. The shot struck Paul on the left side causing a wound of four inches. He died as a result of the gun shot wound.

Defendant testified on his own behalf. He stated that as he was opening the passenger side of the door he saw Paul out the back window of the car. Paul was about 30 feet to the rear coming toward the car. Defendant got the gun, went to the back of the car hoping the sight of the gun would stop Paul. Defendant cocked the gun and told Paul to stop. "By that time seemed like the trigger went off." He also testified that he did not know there was a shell in the chamber of the gun; that he intended to hit the black top to cause Paul to slow down or stop; that he did not intend to kill Paul Hampton.

We consider first defendant's contention that the court erred in instructing the jury on murder in the first degree because there was no evidence of deliberation and premeditation and in so doing may have induced the jury to compromise by finding defendant guilty of murder in the second degree rather than a finding of not guilty or manslaughter.

■ The latter portion of defendant's contention is not without its problems although the last controlling cases in Missouri clearly hold that "[a] defendant who has been convicted only of murder in the second degree may not successfully urge error in the giving of an instruction on murder in the first degree, even if the instruction is not sufficiently supported by evidence. . . The error, if any, was not prejudicial." *State v. Strong*, 339 S.W.2d 759, 765 (Mo. 1960). *State v. Adams*, 497 S.W.2d 147, 154 (Mo.1973). Defendant was convicted of the lesser crime of murder in the second degree. There was no reversible error in giving the instruction on murder in the first degree.

■ Any doubt of the propriety of giving the questioned instruction dissipates when we consider the merits of the issue. For an act to have been done with deliberation it must be performed in a cool and deliberate state of mind. A finding of this element does not depend upon the time involved as much as it does upon an inference reasonably drawn from the evidence. *State v. Nelson*, 514 S.W.2d 581, 583[2] (Mo. 1974). Premeditation is thought beforehand of any length of time, however short. *State v. Smart*, 485 S.W.2d 90, 93[2] (Mo. 1972).

In our determination we view the evidence in the light most favorable to the State and ignore defendant's evidence except where it is favorable to the State. *State v. Nichelson*, 546 S.W.2d 539, 542 (Mo. App.1977). The jury could readily have found antagonism on the part of defendant toward Paul Hampton because Paul had despoiled the garden. He placed a shot gun in his car and went to a tavern frequented by Paul. When defendant was leaving the tavern he saw Paul walking across the parking lot toward the tavern. Defendant placed his six pack of beer on the hood of his car and advanced toward Paul, the fight ensued when they met. From this evidence

the jury could find that defendant was the aggressor no matter who struck the first blow. After the men were separated and Paul was turned away from defendant the defendant took the time to go to the front of his car and get his six pack. He was heard to say, "I'll straighten this out now." He unlocked the door to the driver side of the car, placed the six pack inside, reached through to unlatch the passenger's door, then picked up the shot gun, loaded it, moved to the vicinity of the rear part of the car door, and when Paul turned in response to Harold Jackson's exclamation that defendant had a gun, defendant shot and killed Paul Hampton. The facts bespeak deliberation and premeditation.

The giving of the instruction on murder in the first degree was not erroneous.

■ Defendant complains that there was insufficient evidence of intent on the part of defendant to justify the giving of an instruction on murder in the second degree. We cannot agree. Evidence on the part of the State of a killing by the use of a deadly weapon on a vital part of the body of the victim is sufficient to permit a finding of intent to kill. *State v. Hammonds*, 459 S.W.2d 365, 368 (Mo.1970).

Defendant complains the court erred in permitting the State to exact a commitment from the venire to assess punishment in the penitentiary if it were to find him guilty. He notes that the lesser offense of manslaughter, on which the court would be bound to instruct in a murder case, would not require such a sentence.

The following proceedings form the basis of defendant's complaint:

"MR. MEYER: . . . I want to ask you this question that if at the end of all the evidence and after your deliberation you were to determine as jurors that Mr. Ward was guilty, would any of you have any problem in assessing punishment in this case?

MR. KUETER: Your Honor, I'm going to object to the form of that question. That's asking for a commitment of the jury.

THE COURT: Overruled.

MR. MEYER: You can answer the question. Does anyone feel—I am not trying to get any sort of commitment. I just want to know if you might have had any prior reason: Either—again, and I'm not trying to put you on the spot—either religiously, morally or any problem with assessing punishment, which, of course, would entail some, entail penitentiary? Does anyone feel they have any problem with that?

MR. KUETER: Again Your Honor, I am going to make the same objection. Counsel is asking for—

THE COURT: I'm sorry, Mr. Meyer, would you repeat that question?

MR. MEYER: Your Honor, I asked it a little differently and I will ask again and you can rule. I asked the jury if they would have any problem for whatever reasons, religious, morals, or what-not, have any problem with assessing punishment which could potentially result in time in the penitentiary.

MR. KUETER: That I say is asking for a commitment, Your Honor. I am going to ask for an objection to that question.

THE COURT: Overruled.

MR. MEYER: The question has been asked. Does anyone have any problems with that? I take it by your silence that no one does. All right."

■ Counsel, on voir dire, may not extract from the venire a commitment as to their action in certain contingencies that may arise during the trial. *State v. Kiner*, 441 S.W.2d 720, 723 (Mo.1969). Litigants, however, have the right through the process of voir dire to discover bias or prejudice on the part of prospective jurors and they should be allowed a wide latitude in the search for open minded jurors. *Littell v. Bi-State Transit Development Agency*, 423 S.W.2d 34, 36 (Mo.App.1967).

■ We have set out the questioned portion of the voir dire in detail; a reading of the proceeding demonstrates that counsel was not seeking a commitment from the jurors that they would assess a term in the

penitentiary no matter whether he was convicted of murder or manslaughter. He specifically disclaimed to the panel that he was seeking a commitment from them. The question as finally framed was whether the members of the panel had any scruples against the assessment of time in the penitentiary as punishment. As noted in *State v. McCaine*, 460 S.W.2d 618, 622 (Mo.1970) it is significant that as finally framed the question was whether the panel for any reason would have a problem in "assessing punishment which *could* potentially result in time in the penitentiary", and not whether they *would* assess punishment in the penitentiary if they found defendant guilty. *See also State v. Bolden*, 494 S.W.2d 61, 66 (Mo.1973). In the last analysis control of the voir dire is within the discretion of the trial court. We find no abuse of discretion here. *State v. Green*, 511 S.W.2d 867, 873 (Mo.1974).

Defendant contends that the court erred in admitting a photograph of the body of deceased into evidence. The photograph was taken after the autopsy and shows the upper half of Paul Hampton's body with Hampton placed on his back and displays the wound on the left side of his abdomen.

■■■ The admission of demonstrative evidence is primarily within the discretion of the trial court. It is generally held that such evidence is admissible if it "tends to connect the accused with the crime, or to prove the identity of the deceased, or show the nature of the wound, or throw any relevant light upon a material matter at issue." *State v. Moore*, 303 S.W.2d 60, 65 (Mo. banc 1957).

In this case the defendant sought exoneration from the jury on the ground that he was acting in self defense; that Paul was advancing upon him as he fired the shot. The nature and location of the wound were relevant to the issue.

■■■ The State has the heavy burden of proving the defendant's guilt beyond a reasonable doubt, and it should therefore not be unduly limited in the quantum of its proof. An objection that other witnesses testified to the facts revealed by the demonstrative evidence is not a valid objection. Such evidence can be used to corroborate the testimony of the witnesses. It can also be said that such evidence usually give a clearer concept than an oral description. *State v. Moore, supra.* The court did not abuse its discretion in admitting the photograph.

Defendant also contends that the court erroneously admitted into evidence the shirt that was worn by Paul when he was shot. The shirt has a hole in the left side where the shot entered. What we have said with respect to the photograph is applicable to this exhibit. We find no error in this issue.

Defendant urges that the court abused its discretion in not granting him a new trial on the basis of newly discovered evidence. The newly discovered evidence was the testimony of David Wilkins who was the proprietor of a business located about 90 feet from the tavern on the shopping center where the shooting took place. Mr. Wilkins would testify that he had been sitting on a railing in front of his business when he saw the fight between defendant, Seth and Paul; that he saw them separated, saw defendant get the beer from the hood of his car and put it in the car. He saw Paul walking toward defendant. Neither Harold Jackson nor Dewey White were on the parking lot at that time. He did not see the shooting because he went inside to answer the phone. About the time he picked up the telephone he heard the shot. It took him 12 seconds to move inside his building to the telephone. Mr. Wilkins had been contacted by defendant's counsel before trial and was asked if he had seen the shooting and answered that he had not seen the shooting.

■■■ This evidence is merely cumulative to and corroborative of defendant's testimony. It merely tends to impeach the testimony of Harold Jackson and other witnesses for the State and it is not likely to bring about a different result. It is not sufficient to require the granting of a new trial. *State v. Terry*, 472 S.W.2d 426, 431 (Mo. banc 1971). We find no abuse of the broad

discretion granted the trial court in deciding whether to grant a new trial for newly discovered evidence. *State v. Riley*, 536 S.W.2d 501, 505 (Mo.App.1976).

Finding no reversible error the judgment of the trial court is affirmed.

REINHARD and STEPHAN, JJ., concur.