STATE of Missouri,
Plaintiff-Respondent,

v.

Bobby Lewis SHAW,
Defendant-Appellant.

No. 38923.

Missouri Court of Appeals,
St. Louis District,
Division No. Two.

July 18, 1978.

---

James M. Smith, Asst. Public Defender, 22nd Judicial Circuit, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Stanley H. Robinson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

Defendant Bobby Lewis Shaw was found guilty by a jury of first degree murder and sentenced to life imprisonment by the court pursuant to the Second Offender Act, § 556.280, RSMo 1969. Defendant appeals that conviction, contending that the trial court erred in (1) failing to grant an acquittal at the close of the entire case; (2) denying his motion for a new trial to consider newly discovered evidence not known at the time of trial; and (3) denying his motion for a new trial due to the state's failure to produce defendant's brother, Vancel Shaw, as a witness at trial. We hold these points to be without merit and accordingly affirm the conviction.

The state's principal witness, defendant's younger brother, Steven Shaw, testified that the deceased, Calvin Morris, was on friendly terms with the entire Shaw family including defendant. Morris was the father of the infant son of defendant's sister and was in the habit of visiting the Shaw house-

hold several times a week to see the baby. On the day the shooting took place, September 17, 1975, Morris stopped by the house in the morning. The baby was not there, and Morris left after a few minutes. He told the Shaws that he was going to look for work and would return in a few hours. That afternoon, Steven Shaw was in the basement of the house when he heard sounds from the living room above, as though heavy chairs or tables were being moved. He immediately ran up the stairs to investigate the noises and arrived at the open doorway at the top of the stairs just in time to see defendant fire a gun at Calvin Morris. He testified that Morris was standing in a corner of the living room; defendant stood in the same room with his back to the doorway. Steven's view of the entire incident lasted one or two seconds. During that brief time, neither Morris nor defendant spoke.

Immediately after the shooting, Steven ran back downstairs to get his older brother Vancel, who, with his girlfriend, also in the basement, were the only other people in the house at the time. Together they went upstairs; Vancel took the gun from the defendant and Steven called the police. Steven testified that the gun belonged to his brother Alonzo and was normally kept under Alonzo's bed in a basement bedroom. While they were waiting for the police, defendant "went in" Calvin Morris' pocket; Steven, however, did not see him remove anything from the pocket.

Barry Hinchey was one of the first two police officers to arrive at the scene in response to Steven Shaw's call. He testified that defendant offered two voluntary statements about the crime as he and defendant were waiting in a patrol car after defendant had been arrested and given his "Miranda warnings". Defendant told Hinchey that he had become involved in an argument with Morris, that Morris had drawn a knife, and that he went and got the gun and shot Morris. Later, Hinchey

testified, he retrieved the gun from the house and brought it to the car where the defendant was still seated. Seeing the gun, the defendant spontaneously identified it as the weapon that killed Morris. He stated that he had intended to sell the gun to Morris, and that it accidentally discharged as he was showing it to him. Further testimony indicated that no weapon was found on or near the body of the victim. Defendant did not testify nor did anyone else on his behalf.

Defendant was convicted under § 559.010, RSMo 1969, which defines first degree murder to include "willful, deliberate and premeditated killing". Defendant contends, in his first assignment of error, that the state's evidence fails to establish a submissible case of first degree murder in that it does not justify a finding of the element of deliberation, the factor which distinguishes first degree from second degree murder. *State v. Jewell,* 473 S.W.2d 734, 738 (Mo. 1971). Defendant contends that, at most, he could have been found guilty of second degree murder.

■ "Deliberation" is defined by the Missouri courts to indicate a "cool state of the blood" in the actor.[1] *State v. Marston,* 479 S.W.2d 481, 484 (Mo.1972); *State v. Davis,* 400 S.W.2d 141, 145 (Mo.1966); *State v. Small,* 344 S.W.2d 49, 51 (Mo.1961). The deliberate act is one performed as a "free act of the will", *Davis, supra,* 146, and "while not under the influence of a violent passion suddenly aroused by some provocation". *State v. Anderson,* 384 S.W.2d 591, 608 (Mo. banc 1964). "Premeditation" indicates that the accused thought of his act for any length of time before acting, *Marston, supra,* 484; "deliberation" indicates that he did so in a cool frame of mind. It is not necessary that the actor brood over his actions for an appreciable period of time to constitute deliberation. *Davis, supra,* 146. Inasmuch as premeditation about and exe-

---

1. The instruction given the jury in this case on first degree murder, MAI–CR 6.02, avoids the use of the words "deliberate" or "deliberation". Rather, it presents the issue of deliberation by instructing the jury to consider whether defendant "reflected upon this matter coolly and fully before shooting" Calvin Morris.

cution of an act " 'may be as instantaneous as successive thoughts of the mind' ", Id., quoting from *State v. McDaniel,* 94 Mo. 301, 7 S.W. 634, 636 (Mo.1887), and deliberation refers but to the state of mind during such premeditation, the element of deliberation in a homicide may occur just as instantaneously.

An intentional killing wrought with a deadly weapon used upon a vital part of the body, with nothing more appearing, gives rise to a presumption of second degree murder. However, the further element of deliberation may be inferred from the circumstances, thus supporting a finding of first degree murder. *State v. Davis, supra,* 145. In considering defendant's contention that the state has failed to prove that element of deliberation, we review the evidence to determine whether reasonable men could have found beyond a reasonable doubt as the jury did in this case. *State v. Turnbough,* 497 S.W.2d 856, 858 (Mo.App.1973). In doing so we take "as true the evidence favorable to the state and the favorable inferences to be drawn therefrom and evidence to the contrary is to be rejected. Our function is not to substitute our judgment for that of the jury, but we determine only whether the evidence, considered in the light most favorable to the state and all inferences therefrom, disregarding evidence to the contrary, is sufficient to make a submissible case. If there is sufficient evidence to support the finding of the jury, it should not be disturbed on appeal." *State v. Nichelson,* 546 S.W.2d 539, 542 (Mo.App. 1977). See also *State v. Howell,* 543 S.W.2d 836, 840 (Mo.App.1976); *State v. Cain,* 507 S.W.2d 437, 438 (Mo.App.1974).

Measuring the evidence against the principles set out above, we believe there was sufficient evidence to support a submission to the jury of murder in the first degree. Although Steven Shaw's view of the entire incident was extremely brief, a jury could infer from several aspects of his testimony that defendant acted in a "cool state of blood" in shooting Morris. The scene Steven viewed was static; the atmosphere was unlike that in which one would

suppose the heat of passion to be operative. Both Morris and defendant were motionless. Morris was not moving toward defendant, nor, apparently, was he armed. No harsh words were exchanged between the two. Neither, in fact, spoke. The jury could reasonably infer the element of deliberation from these facts, and we may not substitute our judgment for that of the jury.

Defendant contends, in his second assignment of error, that the trial court erred in denying his motion for a new trial to consider newly discovered evidence which would offer "a high probability" of his acquittal on the charge of first degree murder. In a hearing on that motion, defendant's younger brother, Donald Shaw, testified that he came home from school on the day of the shooting while the police were still in the apartment investigating the incident, and that he observed a kitchen knife on a coffee table in the living room some three feet from the spot where Calvin Morris had been standing when he was shot. The presence of the knife was not noted in any of the police reports, nor was it mentioned at trial. Defendant maintains that Donald Shaw's testimony lends strong credence to a theory of self-defense, and, therefore, the court erred in not granting a new trial on that basis.

In order to secure a new trial on these grounds, a movant must show (1) that the new evidence came to his knowledge after the trial, (2) that his failure to discover such evidence prior to trial was not owing to a lack of due diligence on his part, (3) that the evidence is so material that it would probably produce a different result in a new trial, and (4) that the evidence is not merely cumulative or intended to impeach the testimony of the witness. *State v. Harper,* 473 S.W.2d 419, 421 (Mo. banc 1971); *State v. Harris,* 413 S.W.2d 244, 247 (Mo.1967). As this remedy is not one favored by the courts, the trial court is vested with a great deal of discretion in determining its propriety. *State v. Harper, supra,* 421; *State v. Riley,* 536 S.W.2d 501, 505 (Mo.App.1976). Furthermore, as was

said in *Riley,* "the burden is on the defense to show compliance with the above requirements."

■ Defendant's contention that he has met these standards is not supported by the record. We question whether evidence that there was a knife in the room approximately one hour after the shooting is of such significance that it would "probably" bring about a different result upon retrial. However, we need not decide the point on that issue for there is a total absence of any showing of diligence to discover Donald Shaw's testimony before or during the trial. Reasonable diligence under the facts of this case would have dictated, at the very least, inquiries directed toward those potential witnesses to whom defendant had the easiest access, the members of his immediate family. Donald Shaw, defendant's brother, was living in the same household as was defendant at the time of the incident. Defendant has made no allegation that Donald Shaw was questioned prior to trial and provided misleading or false information, or that other witnesses misled him regarding Donald Shaw's presence at the scene after the incident. *Cf. Foerstel v. St. Louis Public Service Co.,* 241 S.W.2d 792, 795 (Mo. App.1951). In short, he has not provided any explanation for Donald Shaw's absence at trial nor attempted to justify that absence. The trial court did not abuse its discretion in denying a new trial on the basis of newly discovered evidence. *State v. Riley, supra,* 505[15].

Defendant's final point is that the trial court erred in failing to grant a new trial because the state did not call Vancel Shaw, another brother, as a witness at the trial. In his motion for new trial, defendant alleged that Vancel Shaw, an endorsed witness, contacted defense counsel after the trial and said that he would have testified that defendant made no statement to Officer Hinchey at the time of his arrest and

that defendant did not go into the victim's pockets, as Steven Shaw had testified.[2] At the time of the trial Vancel Shaw was living in Seattle, Washington.

■ To the extent that defendant seeks in this point to convict the trial court of error for not granting a new trial because Vancel Shaw's testimony is newly discovered evidence, what was said of the previous point is applicable here: defendant fails to show that reasonable diligence would not have disclosed what Vancel Shaw's testimony would have been. Furthermore, we note the additional fact that the only purpose the testimony would have served would have been to tend to impeach the testimony of Officer Hinchey concerning the statements made by defendant and the testimony of Steven Shaw that defendant reached into one of the victim's pockets after the shooting. Newly discovered evidence which only tends to impeach is not grounds for a new trial. *State v. Whitaker,* 312 S.W.2d 34, 41[15] (Mo.1958); *State v. Lindley,* 545 S.W.2d 669, 672[10] (Mo.App. 1976). Finally, the motion for new trial is neither verified nor accompanied by an affidavit of Vancel Shaw, whose cooperation is presumably available to defendant, his brother. As was said in *Whitaker, supra,* 41, with respect to motions for new trials based on newly discovered evidence, "The affidavit of the witness himself should be produced, or its absence accounted for." See also *State v. Underwood,* 470 S.W.2d 485, 487[5] (Mo.1971): "It is a clearly established rule that unverified allegations in a new trial motion do not prove themselves . . . . . . ."

■ Defendant apparently also argues that, because Vancel Shaw was endorsed as a witness by the state, failure to call him amounted to wrongful suppression of evidence. While it is true that the state "may not suppress evidence vital to the

---

**2.** In the argument portion of his brief, defendant states that Vancel Shaw "was prepared to testify that the appellant had not been given any sort of *Miranda* warnings by arresting officers" and argues that such testimony "becomes crucial to the dispute over whether or not Bob-

by Shaw was ever informed of his right to remain silent." The variance between the motion and brief might warrant our holding that the point has not been properly preserved. However, we treat it on the merits.

defense or convey incorrect or misleading information to a defendant," *State v. Napolis,* 436 S.W.2d 645, 649 (Mo.1969), neither is the state required to call every person whose name is endorsed on the information or indictment as a potential witness. *State v. Jones,* 456 S.W.2d 7, 8 (Mo.1970). Moreover, contrary to defendant's further contention, no inference adverse to the state and in favor of the defendant arises from the state's failure to call such a witness. *State v. McClain,* 531 S.W.2d 40, 45 (Mo. App.1975). Mere endorsement of Vancel Shaw's name did not serve to make him more available to the state than to his brother; and no contention is made that the state took any action to conceal his testimony from defendant or to mislead defendant as to what his brother's testimony would be. The motion for new trial was properly denied.

Judgment affirmed.

STEWART, P. J., and REINHARD, J., concur.