**STATE of Missouri, Respondent,**

v.

**Anthony MORRIS, Appellant.**

**No. 63320.**

Supreme Court of Missouri, En Banc.

Aug. 31, 1982.

Rehearing Denied Oct. 12, 1982.

Henry Robertson, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Lew A. Kollias, John C. Reed, Asst. Attys. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Anthony Morris was convicted by a jury of capital murder, section 565.001 RSMo 1978, and was sentenced to life imprisonment without eligibility for probation or parole for fifty years, section 565.008 RSMo. Appellant charges the trial court erred: in failure to acquit for lack of sufficient evidence on the element of deliberation; in allowing rehabilitative testimony on redirect examination beyond the scope of inconsistent statements used to impeach a witness; in allowing testimony regarding the defendant's refusal to write down an oral exculpatory statement; in failure to grant a mistrial, *sua sponte,* when one of defendant's witnesses testified a co-actor had been convicted; and in denying defendant's motion to quash indictment on the grounds the grand jury selection process discriminated against an identifiable group of people. Affirmed.

## I.

■ The evidence supports defendant's conviction for capital murder. It established that defendant went drinking with Jessie Langston on the evening of September 26, 1980. While at The Corner Bar the defendant spoke with Robert Hills, a cousin whom he rarely saw. Mr. Langston had planned to give defendant a ride to see his wife, but he and the defendant were separated and Langston left the bar. The defendant asked Hills for a ride. Hills and Edward Wallace, a neighbor who had accompanied Hills to the bar, drove the defendant home. The defendant went in to pick up his 12 gauge, single barrel shotgun which he was in the habit of taking with him when he spent the night away from home. When the defendant returned to the car, Hills and Wallace were arguing over a woman.

That same evening, Pierce Bush was alerted by what he believed to be a backfire or gunshot. Mr. Bush lives directly across from Sherman Park. He went out on his porch and saw two men fighting and another, subsequently identified as the defendant, leaning against a car holding a shot-gun. Mr. Bush saw Hills strike Wallace several times, once knocking him down, and saw the defendant step in and hit Wallace with his hand. The defendant held the shotgun during the entire incident. Wallace did not resist the attacks of Hills and the defendant; he did, however, attempt to leave by climbing a hill into the park. Hills and the defendant followed. Wallace stopped when Hills called out to him. When Hills and the defendant caught up with Wallace, they again began striking him. Hills then walked some distance from the other men to urinate. The attacks stopped and Mr. Bush could hear parts of the conversation between the defendant and Wallace. As he was beginning to call the police he heard the defendant say "You think I'm bullshitting"; whereupon Bush saw the defendant shoot Wallace. Mr. Bush saw the defendant reload the gun, nudge Wallace with his foot, and order Wallace to "get up." Wallace did not get up and subsequently bled to death.

At this point, police officers Daniel Crain and Robert Swapshire pulled into the park. Both testified they saw Hills and the defendant standing over the victim; the defendant was holding a shotgun. After a short chase both men were apprehended by the officers as they attempted to get into a car.

■ Appellant contends the evidence does not support a jury finding of deliberation on his part prior to the shooting. In reviewing appellant's contention, this Court will not substitute its judgment for that of the jury, but will determine whether the evidence, considered in a light most favorable to the state, is sufficient to support the verdict. *State v. Strickland,* 609 S.W.2d 392, 395 (Mo. banc 1980). Deliberation is found when an act is performed with a cool and deliberate state of mind; it is not dependant upon the time involved in an act. *State v. Ingram,* 607 S.W.2d 438, 443 (Mo. 1980); *State v. Wood,* 596 S.W.2d 394, 400 (Mo. banc 1980); *State v. Davis,* 400 S.W.2d 141, 145–46 (Mo.1966). Here the defendant followed the victim into the park carrying a shotgun. He struck the victim several

**592**

times, spoke with him briefly, then shot and killed him. Deliberation may be inferred and established by circumstances attending the homicide. *State v. Nelson,* 514 S.W.2d 581, 582–83 (Mo.1974); *Davis,* 400 S.W.2d at 145–46 (Mo.1966); *State v. Shaw,* 569 S.W.2d 375, 377–78 (Mo.App.1978). The evidence was sufficient to support the jury's finding of deliberation.

## II.

■ The testimony of Mr. Bush was impeached through the testimony of Officer Crain. The defense brought out prior inconsistent statements made by Mr. Bush concerning the time of the incident, the sequence of events surrounding the shooting, and specific acts of the defendant. On cross-examination prior consistent statements of Mr. Bush, as related by Officer Crain, were introduced. These statements concerned a description of the men Bush had seen assaulting the victim, and an identification of which assailant had fired the shot.

Appellant relies on *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972) and *State v. Fleming,* 354 Mo. 31, 188 S.W.2d 12 (1945). In *Fleming,* the Court held that prior consistent statements were admissible only when they pertained to the subject on which the witness had been impeached; matters aside from the specific subject on which the witness was impeached were incompetent and inadmissible. The rehabilitative statements elicited from Officer Crain were outside the subject on which Mr. Bush was impeached and should have been excluded. Their admission, however, was not prejudicial. *See Degraffenreid,* 477 S.W.2d at 64. As in *State v. Haggard,* 619 S.W.2d 44 (Mo. banc 1981), the rehabilitative statements made by Officer Crain were identical to prior in-court testimony, *Id.* at 48; and guilt is evidenced in this case by the testimony of an eyewitness and two police officers. The evidence in question was cumulative; its admission was harmless. *See Haggard,* 619 S.W.2d at 48.

## III.

■ Appellant next asserts the testimony that he refused to record an oral statement was an impermissible comment on post-arrest silence. During the trial Sargeant Steven Jacobsmeyer recounted to the jury a statement made by the defendant. The prosecutor then asked whether the statement had been transcribed or taped. Both counsel approached the bench and the defense objected to any testimony which might reflect upon the defendant's exercise of fifth amendment rights. During the conference at the bench, defense counsel asked the prosecutor what the next question would be. The prosecutor replied he would ask the officer if he gave the defendant the opportunity to record his statement, anticipating the officer would answer affirmatively and indicate the defendant chose not to do so. The following discussion between the court and counsel then took place:

MISS ADLER: If he says he refused to make any further statement, he refused.

THE COURT: I agree. I don't think—you keep using the word further statement and I don't think that's the issue. I think the issue here is whether or not he would reduce this statement to a recording and he said no. And I thought the next question was going to be that he wouldn't put it on tape. Now I would agree with Miss Adler that I would stay away from any language about any further statement or an additional statement. I think you can talk about signing this or having this reduced to writing and having him sign it or you can ask whether or not he reduced it to a recording. But I would agree about any further statement—

MISS ADLER: I don't—I'm objecting to the jury getting the inference that this officer was requesting that the defendant do this, you know, for the purposes of the investigation. And that the defendant refused to cooperate in the investigation because, like I said before, I think that's an exercise of his Fifth Amendment rights. If it's merely, *well I asked him if he wanted to and he said he didn't want*

*to, well, then, that's fine.* But I think if you go the other route then you know that's inadmissible. [emphasis added].

THE COURT: I think that once they have shown that the statement has been made, they have a right to show why the statement is not in something other than an oral form. And as to this statement that has been testified to, I think they can show that they offered to put it on a recording or a videotape and he chose not to do that. I think that's permissible, but as to the additional statements or further statements, I would agree. So, I think, you have to be careful how you ask it. (Tr. 279–280).

The following questions and answers between the prosecutor and Officer Jacobsmeyer then occurred:

Q (By Mr. Warzycki) Sergeant, I want you to listen to my question very carefully. With regard to the statement made to you by Mr. Morris, the statement that he told you that you repeated here in Court with regard to that statement, did you ask Mr. Morris if he would agree to reduce that statement, the statement he made to you, to any form such as a tape recording or videotape; yes or no?

A Yes, I did ask him.

Q And did he agree, yes or no?

A No. (Tr. 280).

There were no further questions asked by the prosecutor, nor further objections by defense counsel. This issue has not been properly preserved for review. Defense counsel never objected to the question and answer in issue. In fact, defense counsel stated the question which was asked and answered would be permissible. *See State v. Franco,* 544 S.W.2d 533, 537 (Mo. banc 1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

### IV.

Next, appellant claims the trial court should have declared a mistrial *sua sponte* when a defense witness volunteered that a co-defendant had been convicted in the same case. Appellant claims a new trial is necessary because evidence that a co-defendant pleaded guilty or was convicted is inadmissible, and requires a new trial when introduced into evidence, citing *State v. McCarthy,* 567 S.W.2d 722 (Mo.App.1978).

While "[i]t is error to show in evidence or tell the jury that a jointly accused defendant has been convicted or has plead[ed] guilty," *State v. Aubuchon,* 381 S.W.2d 807, 815 (Mo.1964), granting a mistrial is drastic action and should be exercised only in those circumstances where no other curative action would remove the prejudice claimed. *State v. Johnson,* 504 S.W.2d 23, 27 (Mo.1974). It is also a matter within the discretion of the trial court because the trial judge is in the best position to assess the necessity of a mistrial. *State v. Minor,* 556 S.W.2d 35, 39 (Mo. banc 1977), *vacated on other grounds sub nom. Lee v. Missouri,* 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979). Appellant contends he could not object to his own witness's answer on appeal, yet the defense did not ask the trial court for any curative action regarding the statement. The trial court was in the best position to determine the effect of the statement and what measures, if any, might be necessary to cure that effect. Absent an impermissible abuse of discretion, this Court will not interfere with the trial court's lack of action in this case. *State v. Camper,* 391 S.W.2d 926, 928 (Mo.1965).

### V.

Appellant contends the circuit court erred in denying his motion to quash the indictment. The motion to quash alleged that discrimination was practiced by a systematic exclusion of blacks in the jury pool, and of blacks and women as foremen of grand juries in the City of St. Louis. Appellant asserts he was thereby denied equal protection under the law, due process, and a grand jury composed of a fair cross-section of the community.

Appellant's motion to quash was consolidated with over one hundred cases alleging the same complaint, and after hearing, the motion was denied. Defendant stipulated with the State to allow his appeal of this order to be consolidated in *State v. Payne,*

639 S.W.2d 597 (1982), concurrently decided. In the interest of judicial economy this contention was resolved previously against appellant in *State v. Baker*, 636 S.W.2d 902 (1982).

The judgment is affirmed.

All concur.