**STATE of Missouri, Respondent,**

v.

**Steven Gale NELSON, Appellant.**

No. 58224.

Supreme Court of Missouri,
Division No. 1.

Oct. 14, 1974.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Steven Gale Nelson, pro se.

Madigan, Hadican & Maloney, by J. Martin Hadican, St. Louis, for defendant-appellant.

HIGGINS, Commissioner.

Steven Gale Nelson was convicted by the jury of murder, first degree. His punishment was assessed at life imprisonment, and sentence and judgment were rendered accordingly. § 559.010 RSMo 1969, V.A. M.S. (Appeal taken January 11, 1973;

jurisdiction retained pursuant to order April 9, 1973.)

Appellant contends first that the court erred in submitting this case as murder, first degree, "for the reason that the evidence is insufficient to permit the jury to specifically find all the constituent elements of the same offense, namely, the elements of deliberation and premeditation."

Appellant states the question to be whether the evidence shows the shooting to have been done deliberately, that is, in a cool state of blood, or with a cool and deliberate state of mind, or whether the evidence shows the shooting to have been done suddenly or impulsively. He asserts that the only evidence is that after being goaded by one of his companions, defendant followed other companions into the home of deceased and allegedly shot him; that such evidence does not describe a cool state of blood or mind, but a sudden and impulsive act, and therefore a case of murder, second degree, at best.

■ In presenting his point, appellant recognizes that the deliberation and premeditation necessary to constitute murder, first degree, may be inferred from the circumstances of the homicide. State v. Goodwin, 352 S.W.2d 614 (Mo. banc 1962); State v. Snow, 293 Mo. 143, 238 S.W. 1069 (1922).

Thomas Michael Emig and the victim of this homicide, Jerome Misselhorn, were friends and shared an apartment at 6317 Cates, University City, St. Louis County, Missouri. On December 14 or 15, 1971, a man, later identified as Michael Berry, came to the apartment, dressed in hospital garb, seeking help. He departed when Mr. Emig refused the requested assistance without first notifying the police of Berry's plight. At 10:30 p. m., December 16, 1971, Mr. Emig and his girl friend, Kathryn Davis, returned to the apartment from an evening out and found Mr. Misselhorn dead, lying in the kitchen in a pool of blood.

Police officers who investigated the death observed the dead man lying in the pool of blood, and shot pellet holes in the floor and wall of the kitchen. Two empty shotgun shell cases were recovered in the apartment. It was not disputed that Mr. Misselhorn died as a result of shotgun wounds to his head and body.

At 8:30 p. m., December 16, 1971 Officers Silvey and Stoetzer of the Hanley Hills police stopped a 1970 Falcon belonging to defendant and occupied by defendant, Michael Berry, and five others. The officers observed a shotgun in possession of defendant and took it from the automobile. They directed all seven to go to the Hanley Hills police station where they were later released. The shotgun was retained in custody. At 6:00 p. m., December 17, 1971, defendant returned to the Hanley Hills police station and requested the return of his shotgun at which time he was arrested on suspicion of the killing in University City.

Officer Brocksmith, a firearms expert, conducted tests on defendant's shotgun and concluded the two 20-gauge shells found in the apartment at 6317 Cates had been fired from that shotgun.

On December 16, 1971, Johnnie Ray Taylor, in the company of his brother Robert, Michael Berry, and defendant, met at Orville Tarwater's home where they drank beer all afternoon. Berry told them of the trouble he had encountered on a previous date with someone who refused to help him. Between 5:00 and 6:00 p. m., the group left Tarwater's to drive out to the house of the man who refused to help Berry. They stopped first at defendant's house at 3306 Nebraska in south St. Louis, and defendant obtained his shotgun. The group then proceeded across town to 6317 Cates. While seated in the car at that address, Larry Resinger "hollered, 'I thought you come out here to shoot somebody, Steve. * * * I knew you wasn't going to.'" Later, defendant left the car with

his shotgun. Upon his return, defendant stated that "he shot his head off."

Larry Resinger arrived at Tarwater's at 6:00 p. m., December 16, 1971, where he met Michael Berry, Johnnie and Robert Taylor, Richard Cheung, Frank Ellis, and defendant. They all left shortly in two cars and went to defendant's house where he obtained his shotgun. They then drove to 6317 Cates to "rough up a dude" who had given Berry trouble a few days prior. When they arrived at 6317 Cates, Berry and Robert Taylor went to the apartment followed later by defendant with his shotgun. The three returned in a matter of minutes and the group drove away with defendant stating, "If I go to jail, you're all going to go with me."

Michael Berry and his companions, on December 16, 1971, drove to the apartment on Cates to "rough up" an individual who refused to help him on December 14 or 15, 1971, the day he escaped from police custody in St. Louis County Hospital. When they arrived, he and Robert Taylor went to the apartment, knocked on the door, and entered when Mr. Misselhorn opened it. Mr. Misselhorn advised them that his roommate, Mr. Emig, was out and would not return until later. Mr. Misselhorn gave Berry his wallet and asked Berry and Taylor if they wanted some wine, to which they answered yes. Mr. Misselhorn walked into the kitchen and Berry went outside to invite his companions to enter. When defendant entered, Berry advised him that Mr. Misselhorn was "the wrong guy," but defendant, nevertheless, fired the shotgun and Mr. Misselhorn fell. Berry ran, as did Robert Taylor, and when they were outside the apartment they heard a second shot after which defendant came out of the apartment and said that if anyone refused to help him, he would kill them too.

Robert Taylor was prepared to hit the man who opened the door when he and

Berry went to the apartment, but when Mr. Misselhorn answered the door Berry told him he was the wrong man. He and Berry then went into the kitchen with Mr. Misselhorn, defendant entered the apartment and fired his shotgun into the kitchen. Taylor then ran from the apartment, and when outside, heard a second shot. When defendant arrived at the automobile, he said "I got him."

These versions, in addition to corroborating each other, were variously further corroborated by Frank Ellis, Richard Cheung, and Orville Tarwater.

According to defendant, Steven Gale Nelson, he followed Berry and Robert Taylor into the house where he saw Mr. Misselhorn standing in the kitchen with Taylor and Berry on either side of the doorway separating the dining room and kitchen. He had the gun in his hand pointing to the floor, Berry reached for the gun, it discharged into the floor, Berry took the gun, fired into the kitchen, and deceased fell. He denied shooting Mr. Misselhorn but admitted saying they would all go to jail for the shooting if he did.

■ A finding of the deliberation necessary to murder, first degree, depends not so much upon the time involved as it does upon an inference, reasonably drawn from the evidence, that the defendant performed the act in a cool and deliberate state of mind. State v. Davis, 400 S.W.2d 141, 145–146 [1–4] (Mo.1966).

■ A jury reasonably could find from the stated evidence: that defendant and his companions, including Michael Berry, met as early as 5:00 to 6:00 p. m., December 16, 1971, and discussed driving to University City to "rough up" a man who had refused help to Berry a day or two earlier; that they drove to defendant's house in south St. Louis where he obtained his shotgun; that they then drove to the apartment where Berry had been refused help; that

two of the group went to the apartment; that defendant, upon being reminded of his previous intention to shoot somebody, later followed the two into the apartment with his shotgun; that upon arrival there he accomplished his purpose by shooting Mr. Misselhorn even while Berry was stating that he was not the right man; that upon conclusion of his purpose, defendant returned to the car and advised his companions that he had accomplished the shooting. In these circumstances, the jury reasonably could find that defendant formed his intention to murder someone at 6317 Cates when he obtained his shotgun while a great distance away in south St. Louis, or upon arrival at the University City address when reminded of his stated purpose. In either event, defendant's act was not impulsive or sudden, but one of a deliberate and premeditated nature, and therefore a classic case of cold-blooded, deliberate murder, first degree. State v. Goodwin, supra.

Appellant contends next that the court erred in giving Instructions 1 and 3 in submission of murder, first degree, and murder, second degree, "for the reason that the said instructions do not contain an acting alone or with another clause, which clause should have been contained in such verdict directing instructions in order that the jury be required to make a specific finding that the defendant acted alone or with others."

This contention fails for two reasons.

First, defendant's objections to the instructions both at trial and in his motion for new trial were too general to preserve the contention now presented for review. Rules 28.01 and 70.02, V.A.M.R.; State v. Butler, 353 S.W.2d 698 (Mo.1962); State v. Weed, 271 S.W.2d 557 (Mo.1954).

■ Second, in presenting this contention (as a matter of plain error, Rule 27.-20(c)), appellant concedes, as he must, that Instruction 6 "correctly states the law" with respect to the equal guilt of all who act together with a common intent and the lack of liability if one is but a spectator at the scene. Where the theory of acting in concert is adequately covered in a separate instruction, it is not essential that verdict-directing instructions also hypothesize a specific finding that defendant acted jointly or in concert with others. State v. McCollum, 377 S.W.2d 379 (Mo.1964). See also State v. Price, 362 S.W.2d 608 (Mo.1962); State v. Washington, 364 S. W.2d 572 (Mo.1963).

■ Appellant contends, *pro se*, and as a matter of plain error, Rule 27.20(c), supra, that the court lacked jurisdiction to try this case "for the reason that the indictment is fatally defective because it failed to allege that the defendant, Steven Gale Nelson, committed the offense alleged therein * * *."

The indictment was styled:

STATE OF MISSOURI

VS

STEVEN GALE NELSON, W/M/17
3603 Nebraska
St. Louis

|  | 328770 |
| DEFENDANT | CRIMINAL |

CHARGE: MURDER FIRST DEGREE

and proceeded: "The Grand Jurors for the State of Missouri, now here in Court, duly empaneled, sworn and charged to inquire within and for the body of the County of St. Louis, and State aforesaid, upon their oath present and charge that in the County of St. Louis and State of Missouri, on or about the 16th day of December, 1971, the defendant(s) did wilfully, unlawfully and feloniously premeditatedly, deliberately, and of his malice aforethought make an assault upon one Jerome Misselhorn, hereinafter referred to as victim, with a loaded gun, and then and there feloniously, wilfully, premeditatedly, deliberately, and of his malice

aforethought did discharge and shoot said gun at and upon the body of the said victim, thereby feloniously inflicting a mortal wound upon the said victim from which mortal wound victim did die on December 16, 1971, contrary to Missouri Revised Statutes in such case made and provided, against the peace and dignity, of the State."

Dispositive of this contention is State v. Hurley, 251 S.W.2d 617, 619 [4] (Mo. 1952): "Since appellant was named as defendant in the caption or style of the action, we think it is clear that he was the person referred to by the use of the words 'the defendant' in the body of the information. The person so named as defendant in the caption or style of the action and referred to in the body of the information by the use of the words 'the defendant' was clearly the party charged with the offense stated. Appellant could not have failed to know that he was the person charged. The defect or imperfection could not have tended to prejudice the substantial rights of appellant upon the merits of the action. The party charged was sufficiently designated. Section 545.030 * * *." See also State v. Johnson, 472 S.W.2d 393, 394–395 (Mo.1971), and cf. Chow Bing Kew v. United States, 248 F.2d 466 (9th Cir. 1957), where, in a two-count indictment, count one referred to defendant by name, but he was not named in count two and neither the words "defendant" nor "he" nor "him" appeared in the second count, and, as a result, count two was held defective.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.