**STATE of Missouri, Respondent,**

v.

**Larry J. MERRITT, Appellant.**

**No. 30419.**

Missouri Court of Appeals,
Western District.

Oct. 29, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 3, 1979.

Application to Transfer Denied
Jan. 15, 1980.

Clifford A. Cohen, Public Defender, Gary L. Gardner, Kevin R. Locke, Asst. Public Defenders, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown III, Spec. Asst. Atty. Gen., Kansas City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

MANFORD, Judge.

This direct appeal follows the jury conviction for robbery in the first degree, armed criminal action and assault with intent to kill without malice, along with the overruling of appellant's motion for a new trial. Sentence was affixed by the trial court at 20 years for robbery, 5 years for armed criminal action and 5 years for assault. The sentence for robbery and armed criminal action is to run consecutively and the sentence for assault is to run concurrently with the robbery sentence, the total of these sentences being 25 years.

Five points are alleged as error. The first alleges the trial court erred in overruling appellant's motion to dismiss Count II of the amended information, which alleged armed criminal action because said count placed appellant in double jeopardy by subjecting him to multiple punishments for the same offense in that the proof required under Count II and Count I is identical.

The second alleged error is combined with point three in that both points challenge the admission of expert testimony by introduc-

tion of that testimony by and through written documentation. Appellant contends that the qualifications of the expert were not established and that he was denied the right of witness confrontation and cross-examination.

Appellant's point four alleges error upon the trial court's refusal to give to the jury a cautionary instruction following the prosecutor's calling appellant a "turkey". Appellant claims such remark was made to excite the passion of the jury and to raise prejudice against him.

The final point raised alleges error upon the trial court's failure to dismiss Count III of the amended information because the trial court lacked jurisdiction over appellant in that Count III alleges some person other than appellant committed the offense charged under Count III.

This appellant was charged in three counts under an amended information in lieu of indictment. The three charges were: I-Robbery, First Degree, II-Armed Criminal Action and III-Assault with Intent to Kill, With Pistol, With Malice. The information also included a second offender allegation.

The charge of robbery was brought under § 560.120, RSMo 1969, which reads as follows: [1]

"560.120. Robbery in first degree. Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person; or who shall be convicted of feloniously taking the property of another from the person of his wife, servant, clerk or agent, in charge thereof, and against the will of such wife, servant, clerk or agent by violence to the person of such wife, servant, clerk or agent, or by putting him or her in fear of some immediate injury to his or her person, shall be adjudged guilty of robbery in the first degree."

The charge of armed criminal action was brought under § 559.225, RSMo Supp.1976: [2]

"559.225. Armed criminal action—penalty—exceptions.—1. Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the division of corrections for a term of not less than three years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of three calendar years.

2. Any person convicted of a second offense of armed criminal action shall be punished by imprisonment by the division of corrections for a term of not less than five years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of five calendar years.

3. Any person convicted of a third or subsequent offense of armed criminal action shall be punished by imprisonment by the division of corrections for a term of not less than ten years. The punishment imposed pursuant to this subsection shall be in addition to any punishment

---

1. Pursuant to adoption of the new criminal code, effective January 1, 1979 and under the disposition table, § 560.120 now reads § 569.-020, RSMo 1978.

2. As per footnote no. 1, § 559.225, under the disposition table, now reads § 571.015, RSMo 1978.

provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of ten calendar years.

4. The provisions of this section shall not apply to the felonies defined in sections 559.005, 564.590, 564.610, 564.620, 564.630 and 564.640, RSMo."

The felony charge of assault, count three, was brought under § 559.180, RSMo 1969. This section states: [3]

"559.180. Assault with intent to kill. Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with intent to kill, maim, ravish or rob such person, or in the attempt to commit any burglary or other felony, or in resisting the execution of legal process, shall be punished by imprisonment in the penitentiary not less than two years."

The record reveals the following pertinent facts. On November 30, 1977, just before 7:00 p. m., four men entered Cosentino's Market. Three of the men wore ski masks, one being brown and two navy blue in color. The fourth man was not masked. Upon entering, one of the men, wearing a blue ski mask, grabbed a store employee, Sam Giangreco, around the neck from behind. In addition to being masked, this man held a revolver with a taped handle. In this position, the employee was forced toward an office or booth area used for cashing checks. Upon arrival at this point in the store, the employee and the masked robber were joined by a second masked robber who then held a revolver pointed at the employee. An unsuccessful attempt was made to gain entry to the office or booth, although the robbers tried to kick the door open.

While the above events were unfolding, a third robber approached one of the cashier or check-out stands where employee Paula Wiggans was located. He demanded she open the cash register and place the money in a pillow case. She complied, but apparently not quickly enough and the robber reached into the register and removed some bills. (A fingerprint was "lifted" from the register by law enforcement officers, but it was found not to have matched any print of any employee or the appellant.) In addition to the events already in progress, another robber simultaneously moved to a second cashier or check-out stand and demanded money. The four robbers then departed. Employee Sam Giangreco gave chase, but was unable to catch up to the four and did not observe them enter any type of automobile.

At this point, a customer, Jack Spencer, was arriving at the market. He observed four black males running directly in front of his automobile. This witness observed the four enter a light colored Cadillac, which he thought to be either a 1968 or 1969 model. This customer followed the Cadillac and as he followed, he observed the last portion of the license number. The license was a Missouri plate, of which the last three digits were 569.

As the chase continued, shots were fired and the customer, Jack Spencer, received cuts to his face as a result of shattering glass from the windshield of his automobile. Mr. Spencer returned to the market. He wrote down the three digits on paper, but testified he could not recall what happened to the paper and did not possess it at the time of the trial. He reported to a uniformed police officer his information and the officer then relayed information concerning the color, make and the three last digits of the license plate of the suspect vehicle.

Another police officer, upon hearing this information on his radio, took up position to look for the suspect vehicle. Shortly, the suspect vehicle passed within view of this patrol unit and the unit gave chase. Dur-

3. § 559.180, pursuant to the disposition table, now reads § 565.050, RSMo 1978.

ing the chase, the suspect vehicle was wrecked, coming to an upright position after turning over. The police officer in pursuit saw two persons run from the suspect vehicle.

A search of the suspect vehicle and the immediate surrounding area revealed cash money, a yellow and brown striped pillow case, a .38 caliber revolver with tape on the handle, a H & R .32 caliber revolver, a R & G .38 caliber revolver, two navy blue ski masks, a brown ski mask and a wallet containing appellant's identification card, social security card and his driver's license.

The evidence, by way of a title application, showed the suspect vehicle to be owned by appellant. In addition, the evidence revealed that Missouri License Plate X1T–569 had been issued to the suspect vehicle, identified as a 1968 Cadillac.

The evidence also revealed that some hair fiber had been removed from the ski masks. A comparative hair sample (referred to as the hair standard) was secured from appellant's head. The scientific tests on comparing the hair samples were made by a forensic chemist named Ed Hovey. His tests were supervised by one Gary Howell. At the time of trial, Ed Hovey was a resident of Connecticut and did not appear as a witness. At the time of the trial, Gary Howell, who was qualified as an expert, was Chief Forensic Chemist of the Regional Crime Lab.

Gary Howell testified as to the comparison tests made by Ed Hovey and that he supervised the tests. He also testified, over objection, that in his opinion the hair recovered from one of the ski masks matched the hair standards of appellant. Over further objection, the report of chemist, Ed Hovey, was introduced into evidence pursuant to § 490.660, RSMo 1969, commonly referred to as "The Uniform Business Records as Evidence Law". Witness Howell testified the report of chemist Hovey had been at all times under his care and custody and the entries on the report were made when the tests were performed.

Upon cross-examination, witness Howell testified he could not conclusively state the hair removed from the ski mask came from appellant's head but that in his opinion, the standards as between the two samples contained sufficient comparable features to lead him to conclude that the two hair samples had matching characteristics. He testified there is no way to assess any statistical probability, upon the matching of hair samples, to provide conclusive determination that a particular hair strand matches a particular hair from a particular individual; but what *is* determined is a series of tests to match basic specific characteristics between two samples. In his expert opinion, the sample hair from the ski mask and the sample hair from appellant revealed, upon testing, to have the requisite matching characteristics.

The defense was alibi. Appellant did not testify, but called three witnesses on his behalf. These witnesses were Janice Murphy, appellant's girlfriend, Joyce Lockett, a friend of Janice Murphy and Lamont Lockett, the teenage brother of Joyce Lockett.

In summary, the evidence for the defense was that Janice Murphy and Joyce Lockett, both of whom were employed by Hallmark Cards, left their employment around 4:00 to 4:30 p. m. on November 30, 1977 and were both picked up at their place of employment by appellant in his Cadillac.

These three proceeded to the apartment residence of Joyce Lockett and listened to music, watched T.V. and conducted a general conversation through the entire evening. The testimony asserted the Cadillac was parked at the rear side of the apartment building, but in plain view from the window of the Lockett apartment.

Around 7:00 p. m., Lamont Lockett, teenage brother of Joyce Lockett, arrived at his sister's apartment. He testified that although he was familiar with the Cadillac automobile, he did not observe it at the time in question. Lamont Lockett did not reside with his sister, but came by her apartment en route to a basketball game to be held in the neighborhood. He testified he saw appellant at the Lockett apartment and then departed for the game.

Witness Joyce Lockett and Janice Murphy testified they observed appellant's Cadillac from the apartment window at various times during the course of the evening. Joyce Lockett eventually went to bed. Janice Murphy testified that around 11:00 p. m. she and appellant observed the Cadillac missing from where it was parked and appellant called the police.

By way of rebuttal evidence, it was established at 11:34 p. m. a caller identifying himself as Larry Merritt reported the Cadillac stolen.

Errors alleged are taken up in the order of presentment, except that points two and three are disposed of conjunctively, since they interrelate to the same evidence and parcel of the trial.

Point one is directly and squarely disposed of under the rule in *State v. Treadway*, 558 S.W.2d 646 (Mo.banc 1977), cert. denied, 434 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). Missouri cases have ruled against defendants on the issue raised here by appellant's point one. *State v. Hutchinson*, 582 S.W.2d 350 (Mo.App.1979); *State v. Carter*, 577 S.W.2d 109 (Mo.App. 1978). While appellant cites *Blockburger v. U. S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Jeffers v. U. S.*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *State v. Toombs*, 326 Mo. 981, 34 S.W.2d 61 (1930) and *Cain v. U. S.*, 19 F.2d 472 (8th Cir. 1927), these cases are not controlling or persuasive as they relate to appellant's first point of alleged error.

*State v. Treadway, supra*, and a more recent decision, *State v. Valentine*, 584 S.W.2d 92 (Mo.banc 1979) declared the law in Missouri to be that the "separate offense rule" and not the "same transaction rule" is to be applied in determination of the question of double jeopardy.

Appellant argues that this court should reject the majority opinion, and hence the prevailing rule of law as determined by our State Supreme Court, in *State v. Treadway, supra* and *State v. Valentine, supra* and conclude in opposition to that rule of law, that since the evidence for conviction for the offense of robbery, first degree, and conviction for armed criminal action was the same, appellant was, in fact, placed in double jeopardy in violation of the 5th and 14th Amendments of the federal constitution.

This court is not persuaded by appellant's argument. It is, of course, not within the authority of this court to override the decisions of the State Supreme Court and there is nothing within the evidence of this case to sufficiently distinguish this case from *State v. Treadway, supra* and *State v. Valentine, supra* to avoid the application of the rule in those two cases. In addition, the rules laid down in *State v. Treadway, supra* and *State v. Valentine, supra*, are proper in keeping with the spirit of public policy which gave rise to the enactment of the statutory criminal offense of armed criminal action.

Point one is ruled against appellant.

Points two and three are taken up together. Appellant contends the laboratory report of Ed Hovey should not have been admitted into evidence because it was not established that Ed Hovey was an expert and in his not being present to testify, this denied appellant the right to confront this witness and denied him the opportunity to cross-examine this witness.

The evidence herein established that Ed Hovey was a forensic chemist. When this was testified to by witness Howell, no objection was entered. In addition, witness Howell testified that he actively supervised the tests made by Hovey regarding the comparison of hair samples from appellant's head and one of the ski masks.

The report of Hovey was admitted by the trial court under § 490.660, RSMo 1969, commonly referred to as the Uniform Business Records as Evidence Law. There was no dispute in the evidence that witness Howell was the proper person (as custodian of the laboratory report), nor was there any

dispute that the report was part of the records of the crime laboratory. No question arose relative to the date of entry and the results and other notations in the report. The only contention by appellant is that no proper foundation was laid to establish Ed Hovey was a qualified expert and thus capable of conducting such tests and compiling a report of his findings.

■ There is no question under the law that opinions of experts contained in a laboratory report prepared by that expert are admissible without the presence of and testimony of the expert himself. Appellant concedes that point under *State v. Taylor*, 486 S.W.2d 239 (Mo.1972).

Appellant cites for the court the case of *State v. Rhone*, 555 S.W.2d 839 (Mo.banc 1977). In this case, the majority opinion of the State Supreme Court concluded, by adopting the following view on the subject, at 841, " 'that entries in the form of opinions are not admissible if the declarant was not an expert making a statement concerning a matter within his expertise and as to which he would be competent to express an opinion if testifying in person.' " This case went on to declare, at 841, "It must be shown that a witness has 'sufficient experience and acquaintance with the phenomena involved to testify as an expert.' *Hyman v. Great Atlantic & Pacific Tea Co.*, 359 Mo. 1097, 1101, 225 S.W.2d 734, 736 (1949). However, a 'witness may be competent to testify as an expert though his knowledge touching the question at issue may have been gained by practical experience rather than by scientific study or research.' *Herman v. American Car & Foundry Co.*, 245 S.W. 387, 389 (Mo.App.1922). 'The authorities generally agree that it would be impracticable to set any absolute standard as to the qualifications of an expert witness; and that of necessity the question must rest largely in the sound discretion of the trial court.' *State v. Rose*, 249 S.W.2d 324, 332 (Mo.banc 1952)."

In *State v. Rhone, supra*, the custodian of certain police department records testified, and her testimony included recitation of a laboratory report of one Lloyd Hill, a former criminologist for the St. Louis Police Department. The custodial witness was asked a series of questions concerning the qualifications of Lloyd Hill and the particular procedures followed in tests made preparatory to Hill's report.

The State Supreme Court upheld the admission of such evidence.

With that reference, review of the facts of this case relative to the point in question must be undertaken. The decisive factor is twofold, of course; that being whether under *State v. Rhone, supra* the facts herein are insufficient to have qualified Hovey under the rule, or in the alternative, whether the facts of this case distinguish this case from the rule in *State v. Rhone, supra*. The remaining question is, of course, that in light of the facts of this case, did the trial court abuse its discretion in the matter?

■ As has already been pointed out, when witness Howell first commenced his testimony, he identified Hovey as a former chief forensic chemist for the local crime laboratory. This statement went unchallenged. If this was the only fact on the record relative to this question, this court would be faced with deciding whether the trial court abused its discretion in permitting Hovey's report to be admitted into evidence. The record, however, reveals not only that Hovey was the chief forensic chemist but that witness Howell assisted Hovey in the testing, reviewing the results of the tests, was aware of the contents of the report and how the report was compiled and approved the report of Hovey when it was completed.

Unlike the case of *State v. Rhone, supra*, where there was a mere custodian of records, the court herein was not faced with merely deciding whether a custodian could testify as to the expert qualifications of one whose report was offered as evidence. By contrast, the record herein reflects that Hovey was a chief forensic chemist and that Hovey and Howell worked together on the tests. The record reveals the step-by-step details followed by Hovey and Howell to arrive at the conclusions contained within Hovey's report.

The record shows that witness Howell was also a chief forensic chemist and considerable detail is in the record to establish the qualifications for achieving such status.

The admission of Hovey's report was permissible under the facts of this particular case as an exception to the hearsay rule pursuant to § 490.660, RSMo 1969, the Uniform Business Records as Evidence Law, and such admission was not, under the facts herein, an abuse of discretion by the trial judge.

Points two and three are ruled against appellant.

The fourth point raised by appellant involves the alleged characterization of appellant as a "turkey" in the closing argument by the prosecuting attorney.

Appellant alleges that such remark was made to "excite the passion of the jury and engender prejudice against appellant."

As has been pointed out by appellant under *State v. Stockbridge*, 549 S.W.2d 648 (Mo.App.1977), the court has held, at 651, that ". . . the prosecutor occupies a quasi-judicial position and is, at once, charged with the duty to thoroughly and vigorously present the state's evidence, on the one hand, and on the other hand, conduct these duties in such a manner as will afford the defendant a fair and impartial trial. He shares this latter responsibility with the trial court." *citing State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 526[1, 2] (banc 1947); *State v. Allen*, 363 Mo. 467, 251 S.W.2d 659, 662[4] (1952); *State v. Selle*, 367 S.W.2d 522, 530[22] (Mo.1963); *State v. Heinrich*, 492 S.W.2d 109, 114[8] (Mo.App. 1973) and *State v. Hicks*, 535 S.W.2d 308, 311[2] (Mo.App.1976). The court, in *State v. Stockbridge, supra,* at 651, went further in pointing out, "As a natural concomitant of this rule, a prosecutor 'should never be permitted to apply unbecoming names or epithets to the defendant, or refer to the defendant or his alleged accomplice *as a criminal of any class or kind.* * * * ' " *citing State v. Taylor*, 320 Mo. 417, 8 S.W.2d 29, 37[25] (1928). See also: *State v. Leonard*, 182 S.W.2d 548, 551[5] (Mo.1944); *State v. Stroud*, 362 Mo. 124, 240 S.W.2d 111,

113[9] (1951); *State v. Harris*, 351 S.W.2d 713, 715–716[1–4] (Mo.1961); and *State v. Turnbull*, 403 S.W.2d 570, 572–573[5] (Mo. 1966). The court finally concluded (in *State v. Stockbridge, supra,* at 651) that in calling the defendant "a professional", "a pro", "a professional car thief" and as engaged in "stealing cars" that "The arguments of the prosecuting attorney in this case far exceeded propriety and the rules of restraint properly imposed upon him by reason of his quasi-judicial position . . . It is apparent that these arguments constituted inflammatory appeals to arouse the jurors to personal hostility toward the defendant as a hardened criminal."

There is nothing but absolute soundness in the ruling contained in *State v. Stockbridge, supra,* but the question remains as to whether the facts of the present case bring the present case within the rule in *State v. Stockbridge, supra.*

As was mentioned previously, one of the masked robbers reached into the cash register in the market. Police investigation revealed a fingerprint which was not matched to anyone, including the appellant. This evidence was referred to during the trial and the record clearly establishes the fingerprint could not be matched to appellant.

In the rebuttal portion of his closing argument, with reference to the fingerprint, the prosecutor made the following remarks, "MR. WELCH (prosecutor): Furthermore, the fingerprint that Mr. Rogers is concerned about. I don't know why he is so concerned about it frankly. I don't know, as Paula Cosentino [formerly Paula Wiggans] doesn't know, when you reach in and grab money out of a register, whether you leave a fingerprint or not. Apparently, somebody left a fingerprint, but you remember what they said? They didn't match that fingerprint to anybody, Paula Cosentino, or anybody else. Heaven knows they tried, and heaven knows it didn't match this turkey or I would have had it in here."

This was the sum total of any characterization of appellant by the prosecutor. Appellant objected to the remark and the objection was overruled.

Appellant provides the court with the definition of the term "turkey" by reference to THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, which defines turkey as slang, meaning "a person regarded as continually inept; a misfit". The state converges on this definition, urging the court to conclude the definition as applicable to appellant in light of the evidence that he is a person "regarded as continually inept; a misfit".

While this court does not condone or encourage the use of any description of an accused, this court is not persuaded to conclude that such a passing remark inflamed this jury against this appellant so as to prejudice the jury against appellant. The facts of this case simply fail to bring this case under the sound rule of *State v. Stockbridge, supra.*

Likewise, this court is not persuaded by the state's argument that this characterization, by some stretch of legal imagination, might be made applicable to appellant in light of the charges and evidence of this case.

The simple fact is that the remark made herein should and does receive the admonishment of the court, but likewise, the evidence simply fails to establish that the remark inflamed this jury, nor does the evidence support the conclusion that appellant was prejudiced by the remark or the court's ruling.

Point four is ruled against appellant.

The final point raised by appellant is that the trial court committed error in not dismissing Count III of the information because, as appellant alleges, one Leonard Donahue committed the assault and this being so, the court had no jurisdiction to try appellant on such count.

The information was captioned as follows:

"STATE OF MISSOURI

v.

LARRY J. MERRITT"

Counts I and II consistently refer to "said defendant". Count III reads as follows:

"COUNT III

that thereafter on the 30th day of November, 1977, in the County of Jackson and State of Missouri, said defendant did then and there, in and upon one Jackie Spencer, feloniously, wilfully, on purpose and of his malice aforethought, make an assault, and the said Leonard Donahue, either acting alone or knowingly in concert with another, with a certain deadly weapon, towit [sic]: a pistol loaded with gunpowder and leaden balls, then and there feloniously, wilfully, on purpose and of his malice aforethought, did shoot off at, against and upon the head and body of him, the said Jackie Spencer, with a pistol aforesaid did wound, with the felonious intent then and there, him the said Jackie Spencer, feloniously, wilfully, on purpose and of his malice aforethought to kill and slay;"

The specific language in the information objected to on this appeal is, " . . . make an assault, and the said Leonard Donahue, either acting alone or . . . "

The review of this point is made under Rule 28.02, *State v. Meiers,* 412 S.W.2d 478 (Mo.1967) and *State v. Williams,* 546 S.W.2d 533 (Mo.App.1977).

In support of this alleged error, appellant cites *State v. Nelson,* 514 S.W.2d 581 (Mo. 1974). That was a case wherein the charge was murder in the first degree. The accused argued unsuccessfully that since he was not named specifically in the body of the indictment, the court lacked jurisdiction to try him. The court disagreed and affirmed the conviction.

*State v. Nelson, supra* is not dispositive of appellant's contention for two reasons. First, the failure to specifically name the accused within the indictment or information has already been ruled upon as pointed out under *State v. Nelson, supra.* Secondly, the case herein does not involve reference to the terms as "the defendant" or "said defendant" but rather, it includes references to another otherwise nonidentified person.

Point V is ruled to the favor of appellant and this cause is reversed and remanded upon Count III only. The reasoning for such ruling and comments relative to the particular questions involved are set forth below.

Our sense of justice under our legal system has provided a long history relative to meticulous care in regard to the wording of indictments and convictions. There is no sound argument which can be presented against such an approach. On the other hand, neither the statutes, rules nor case decisions have suggested or created any mechanism for the application of pure common sense relative to such things as useless language or typographical errors in indictments and informations.

A brief review of the more pertinent cases on this point illustrates what is meant by the latter statement. *State v. Manning*, 168 Mo. 418, 68 S.W. 341 (1902) is a Supreme Court case involving the charge of assault where, after originally charging the accused with the criminal act, the indictment, by its wording, provided the victim, and not the accused, committed the criminal conduct of assault. The case was reversed by virtue of that wording. In even a more clearly illustrated case, *State v. Stephens*, 199 Mo. 261, 97 S.W. 860 (1906), a conviction was reversed by virtue of wording in the indictment whereby one Stephens was accused, by indictment, of the criminal act of assault to rape. Within the body of the indictment, the victim was named as the perpetrator. Thus, the court reversed the conviction, reasoning that the indictment was defective and concluding that the assault to commit a rape, by wording of the indictment, had been caused by the victim herself. The conclusion speaks for itself.

In the case of *State v. Jones*, 570 S.W.2d 336 (Mo.App.1978)[4] a conviction for stealing under $50.00 was reversed when the record revealed the information, in its entirety, failed to name Allen Jones. Instead, the information, in both its caption and charging portions, named as the accused one Paul Humphrey. Little argument can be offered resisting the justice in the decision in *State v. Jones, supra*, but that case perhaps, more than any other, serves to point out the need for procedural change, either by statute or Supreme Court rule, or both, to insure the accuracy of the indictment or information prior to a trial upon the issues. In the instant case, the appellant was described specifically by name in the original indictment executed by the Grand Jury of Jackson County. The prosecution then executed an information in lieu of an indictment. Within the information, this appellant was specifically named in the caption and repeatedly referred to in Counts I, II and III as "the defendant" or "said defendant", thus satisfying the rule in *State v. Nelson, supra*. However, within the wording of Count III, although prior reference was made to this appellant by the use of the term "said defendant", Count III of the information then included other language, adding another name within the latter wording of Count III.

With that set of facts, this court is expected to square such facts with Rule 24.-01(a), which provides, "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." See *State v. Phelps*, 478 S.W.2d 304 (Mo. 1972) and *State v. Simone*, 416 S.W.2d 96 (Mo.1967).

The necessity for proper, clear and concise accusation of a crime is, of course, premised, in addition to a sense of fairness, upon any individual being placed in a position of double jeopardy for the same crime, whether he be acquitted or convicted.

In the instant case, in addition to being specifically identified by name in the original indictment, this appellant was named in the caption of the information and with reference to appellant by the use of the

---

4. *State v. Manning, supra*, and *State v. Stephens, supra* cited in *State v. Jones, supra*, as controlling authority.

terms "the defendant" and "said defendant" as being consistently found within the body of the information. The reading of the information in its entirety clearly identifies appellant as the accused, describes the charges against him, and provides the appellant with sufficient information for him in preparing a defense to the charge. It appears, with the application of common sense by a reading of the information, this appellant knew of the charge and that he was clearly identified as the accused. See *State v. Simone, supra; State v. Tandy*, 401 S.W.2d 409 (Mo.1966); *State v. Barlett*, 394 S.W.2d 434 (Mo.App.1965). The problem arises, however, in trying to square the precise set of facts herein with the decisions in *State v. Manning, supra, State v. Stephens, supra* and *State v. Jones, supra*. The wording of Count III, when weighed with all the pertinent facts of this case, still brings this case unquestionably close to the decisions in *State v. Manning, supra, State v. Stephens, supra* and *State v. Jones, supra*.

One might conclude that since the appellant herein was properly and unquestionably identified by name in the original indictment, such would be sufficient to affirm the conviction. However, the state herein, after securing an original indictment, proceeded to trial on an information against the appellant. If on appeal mere reference back to the original indictment were permissible, Point V raised herein by appellant would be ruled against him. However, the status of the original indictment became suspended. This question has been before our courts on prior occasions. The general rule is that absent the sustaining of a motion to quash or upon the quashing of the original indictment upon the court's own action, the original indictment or information is suspended. *State v. Thompson*, 392 S.W.2d 617 (Mo.1965), affirmed upon retrial 414 S.W.2d 261 (Mo. 1967) and § 545.110, RSMo 1978.[5]

In *State v. Thompson, supra,* under the original indictment, the accused had been charged with attempted robbery. Upon a subsequent information, the accused was charged with felonious assault. In that case, the court rightfully concluded a conviction upon the information could not stand where it substituted a distinctly different offense, § 545.300, RSMo (1978).[6] The court reversed the decision and concluded that retrial could be had upon the original charge since the original indictment had been merely suspended. The court concluded the statute of jeofailes could not be applied to such a set of facts.

It would appear that the statute of jeofailes, in light of decisions previously cited herein, could not be applied to the case herein.

The dilemma herein is that this court finds itself bound to apply principles of prior case decisions to a set of facts which illustrate nothing more than typographical errors and inclusions of words which bear no relationship to the safeguards against double jeopardy or the requirements of Rule 24.01(a). The reference to cited authority herein is not made to reveal criticism of those decisions, but rather to suggest to the Supreme Court of Missouri that a different approach might be found to resolve such questions presented in this case upon Count III of the information. It is suggested that the Supreme Court of Missouri adopt a specific rule, mandatory in nature, requiring all trial courts, by special pretrial conference or hearing, upon the record and in the presence of the accused, defense counsel and prosecuting attorney, to determine the accuracy of the wording of indictments and informations, both as to the requirements of Rule 24.01(a) and specific correct identity of the accused before proceeding to the trial of any criminal case upon the merits. This procedure would require a bare minimum of time and effort, but could perhaps drastically reduce or possibly eliminate the expense in time and money for the accused, the courts, the Bar and the general public, which results in the retrial of cases turning upon such points.

---

5. Adoption of new criminal code did not repeal, change or renumber this section.

6. Adoption of new criminal code did not repeal, change or renumber this section.

Such procedure could be an aid to the already overburdened trial judges and counsel.

One might say that § 545.230, RSMo 1978,[7] which reads as follows:

"545.230. Indictment by wrong name. If a defendant be indicted by the wrong name, unless he declare his true name before pleading, he shall be proceeded against by the name in the indictment. If he allege that another name is his true name, it must be entered in the minutes of the court; and after such entry, the trial and all other proceedings on the indictment shall be had against him by that name, referring also to the name by which he is indicted, in the same manner, in all respects, and with the same consequences as if he had been indicted by his true name."

solves the problem, but research of the cases interpreting such statutory section neither answers the question on preventative procedures nor finds itself without latent conflict with decisions previously cited herein on the issue of an incorrect name in the indictment or information.

One might argue that § 545.-030(14), RSMo 1978 [8], which reads as follows,

"545.030. Indictments and informations, when valid. 1. No indictment or information, shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected: . . .

(14) For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged; . . . "

would resolve the problem, but once again effort to square that statutory language with *State v. Manning, supra, State v. Stephens, supra* and *State v. Jones, supra*, becomes futile. Indeed, the state in the case herein argues the application of the surplusage doctrine. A fair understanding of that statute, however, appears more towards acts or omissions alleged, rather than the questions of proper naming of an accused. This court is reluctant to agree with the state's argument of surplusage, because that approach should be kept very narrow in its application. In addition, the particular language of that section appears to fly in the face of *State v. Manning, supra, State v. Stephens, supra,* and *State v. Jones, supra* when the issue is the naming or identity of an accused. Admittedly, these decisions could have, but failed to, entertain any consideration of how to prevent the possibility of such a problem. It is felt the suggestion herein, for a mandatory pretrial determination of this question, is by far the better approach to the question than the application of the concept of surplusage.

The judgment for conviction as to Counts I and II is, in all respects, affirmed. The judgment for conviction upon Count III is hereby reversed and remanded for the reasons set forth herein.

PRITCHARD, J., concurs.

SOMERVILLE, P. J., concurs in result.

---

7. This section was not repealed, changed or renumbered by adoption of new criminal code.

8. Adoption of new criminal code did not repeal, change or renumber this section.